[No. 13051-3-II. Division Two. November 14, 1989.]

THE STATE OF WASHINGTON, *on the Relation of Prosper Ostrowski, Respondent,* LARRY NICHOLSON, *Appellant,* v. SAM HAGUEWOOD, *Appellant,* JOHN HORDYK, *Respondent.*[†]

---

[†]This opinion was reported in the advance sheets of the Washington Appellate Reports as THE STATE OF WASHINGTON, *on the Relation of Prosper Ostrowski, Respondent,* v. LARRY NICHOLSON, ET AL, *Appellants.*

*Craig D. Knutson, City Attorney; Kenneth D. Williams* and *Johnson & Williams,* for appellants.

*William J. McDowell,* for respondent.

PETRICH, J.—In this quo warranto proceeding, Prosper Ostrowski and Larry Nicholson challenged the Mayor of Port Angeles's appointments of John Hordyk and Sam Haguewood to the city council. On cross motions for summary judgment the trial court ruled that Hordyk and Haguewood were improperly appointed to the positions. The trial court ousted Haguewood from his position and replaced him with Ostrowski. However, finding Nicholson's action barred by laches, the court refused to oust Hordyk. Haguewood and Nicholson appeal.

The question we are asked to resolve is whether the statute, which applies the council vacancy filling process of the council–mayor plan to the council–manager plan, restricts the voting rights of the mayor under the latter plan in the selection of a replacement to fill a vacancy on the council.

We conclude that the mayor's voting rights under a council–manager plan are not so restricted. Therefore, we hold that the appointments of Hordyk and Haguewood were proper. Accordingly, we reverse the trial court's ouster of Haguewood and affirm the trial court's refusal to oust Hordyk but for different reasons.

Port Angeles operates under the council–manager plan of government, controlled by the Optional Municipal Code, RCW 35A.13. There are seven positions on the Port Angeles city council. The council biennially elects a mayor from among its members to preside at the council meetings. Frank McPhee is the duly elected Mayor.

On September 1, 1988, a vacancy on the council was created by the resignation of councilperson Allen Hesla. Counting the Mayor's vote, the council was unable to achieve a majority vote to select a replacement. Ten separate votes were taken. When 30 days had passed without an agreement on a replacement, the Mayor appointed Hordyk.

A similar situation occurred on May 3, 1989, when Glennis Stamon resigned from the council. In four different votes by the council, the Mayor's vote, again, made it impossible to achieve the required majority vote. When the 30–day period expired without agreement by the council, the Mayor appointed Haguewood.

Prosper Ostrowski and Larry Nicholson had sought to fill the vacant council positions along with Hordyk and Haguewood. They contend that allowing the Mayor to vote so as to create an impasse allows him an extra vote to which he is not entitled because he has the authority to make the appointment when the council cannot agree on a replacement. The voting records indicate that, if Mayor McPhee's vote is not counted, Ostrowski was the first candidate to receive a majority vote in the effort to replace Hesla, and that Nicholson would have been elected by a majority of the council to fill the vacancy created by the later resignation of Stamon.

The eligibility for the office, the manner of selection and the authority of the mayor vary extensively between the

two plans of municipal government. Under the council–manager plan, the council biennially elects a chairperson from the members of the council. The chairperson is given the title of mayor and has, in addition to a limited number of other distinctions, the responsibility of presiding at the council meetings. RCW 35A.13.030. That statute expressly provides that the mayor under the council–manager plan "shall continue to have all the rights, privileges, and immunities of a member of the council."

Conversely, under the mayor–council plan, the mayor is elected by the citizens at biennial municipal elections for a 4-year term. RCW 35A.12.040. The mayor presides over council meetings "but shall have a vote only in the case of a tie in the votes of the councilmen with respect to matters other than the passage of any ordinance, grant, or revocation of franchise or license, or any resolution for the payment of money." RCW 35A.12.100. Thus, while the mayor in the council–manager plan has unfettered voting rights under RCW 35A.13.030, the mayor in the mayor–council plan votes only in certain tie–breaking situations.

Vacancies on the council operating under the council–manager plan are governed by RCW 35A.13.020. It provides in part that in "council–manager code cities . . . the occurrence and the filling of vacancies . . . shall be governed by the corresponding provisions of RCW . . . 35A.12.050 . . . relating to the council of a code city organized under the mayor–council plan".

RCW 35A.12.050 provides in part:

[a] vacancy . . . in the council shall be filled for the remainder of the unexpired term, if any, at the next regular municipal election but the council, or the remaining members thereof, by majority vote shall appoint a qualified person to fill the vacancy until the person elected to serve the remainder of the unexpired term takes office. . . . If, after thirty days have passed since the occurrence of a vacancy, the council are unable to agree upon a person to be appointed to fill a vacancy in the council, the mayor may make the appointment from among the persons nominated by members of the council.

■ Whether the limited voting rights of a mayor under the statutory scheme of the mayor–council plan apply to RCW 35A.13.020 as a result of its incorporation of RCW 35A.12.050 may be resolved by rules of statutory construction. RCW 35A.13.020 is a statute of specific reference because it refers specifically to a particular statute by its section number. *See* 2A N. Singer, *Statutory Construction* § 51.07 (4th ed. 1984). "In a statute of specific reference only the appropriate parts of the statute referred to are considered." 2A N. Singer, *Statutory Construction* § 51.08; *Rollins v. Gordonsville*, 216 Va. 25, 215 S.E.2d 637 (1975). Further, if a statute is clear and plain, the court will not read things into it which are not there. *In re Taylor*, 105 Wn.2d 67, 69, 711 P.2d 345 (1985).

■ RCW 35A.13.020 refers to RCW 35A.12.050 to govern the vacancy filling process. However, it does not additionally refer to RCW 35A.12.100 to limit the mayor's voting rights in the vacancy filling process. Therefore, the unlimited voting rights of a mayor under the council–manager plan, established in RCW 35A.13.030, are not superseded. Both RCW 35A.13.020 and RCW 35A.12.050 are clear and plain, and neither in and of itself limits the voting rights of the mayor.[1]

We hold that RCW 35A.13.020, while incorporating RCW 35A.12.050 for filling council vacancies, does not also incorporate RCW 35A.12.100, which limits the mayor's voting rights in the mayor–council plan. Mayor McPhee thus had full voting rights as a council member in the vacancy filling process. As Mayor, he also had the authority to make the council appointments when the council reached a deadlock.

---

[1]Although the point was not noted in the briefs or in oral arguments before this court, it appears that a pro tempore mayor selected from the ranks of the council members in a council–mayor plan would probably have full voting rights as a council member. The council may designate one of its members as mayor pro tempore to serve in the absence or temporary disability of the mayor. RCW 35A-.12.065. The appointment of a council member to preside at a council meeting "shall not in any way abridge his right to vote on matters coming before the council at such meeting." RCW 35A.12.110.

Therefore, we reverse the order of the Superior Court ousting Haguewood from his council position and the designation of his replacement.

In light of our disposition of this issue, it is unnecessary to reach the question of laches, which was relied on by the trial court when it refused to oust Hordyk.

The trial court's judgment ousting Haguewood is reversed and its refusal to oust Hordyk is affirmed.

ALEXANDER, C.J., and REED, J., concur.