*In re* MARRIAGE OF LORI LUBBS, Petitioner-Appellee, and JUDSON L. DUKES, JR., Respondent-Appellant (The Department of Public Aid, Intervenor-Appellee).

Third District   No. 3—99—0265

Opinion filed March 9, 2000.

Richard W. Zuckerman (argued), of Law Office of Richard W. Zuckerman, of Peoria, for appellant.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Karen J. Dimond (argued), Assistant Attorney General, of counsel), for appellee.

JUSTICE HOMER delivered the opinion of the court:

Respondent filed a petition to declare the nonexistence of a parent-child relationship under section 7(b—5) of the Illinois Parentage Act of 1984. 750 ILCS 45/7 (b—5) (West 1998). The petition was dismissed for failure to allege DNA evidence establishing nonpaternity. Respondent appeals. After our careful review, we affirm.

## FACTS

On September 3, 1996, Lori Lubbs filed a petition to dissolve her marriage to Judson Dukes, Jr. In her petition, Lubbs alleged, *inter alia*, that she and Dukes had married on December 14, 1995, had separated the following day, and that one child, Taylor, was born to the parties on May 24, 1993. Dukes' answer denied that he was the father of Taylor.

On May 9, 1997, the trial court entered its judgment for dissolution of marriage, finding, *inter alia*, that Taylor had been born to the couple. Lubbs was granted custody and Dukes was ordered to pay child support and maintenance.

On October 28, 1998, Dukes filed a petition to declare the nonexistence of a parent-child relationship pursuant to section 7(b—5) of the Illinois Parentage Act of 1984 (the Parentage Act) (750 ILCS 45/7(b—5) (West 1998)). The petition alleged that Dukes was reliably informed and believed deoxyribonucleic acid (DNA) tests would determine that he is not Taylor's biological father and that he believed Lubbs would not voluntarily agree to DNA testing. The Illinois Department of Public Aid (the Department) intervened and moved for involuntary dismissal under section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 1998)), arguing that exclusion by DNA testing is a condition precedent to the filing of such a petition. The Department's motion was granted. Dukes appeals.

## ANALYSIS

In reviewing an order granting a motion to dismiss, the appellate court applies a *de novo* standard of review. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116, 619 N.E.2d 732, 735 (1993). Likewise, statutory construction is a question of law to be determined by this court *de novo*. *Advincula v. United Blood Services*, 176 Ill. 2d 1, 12, 678 N.E.2d 1009, 1015 (1996). The cardinal rule of statutory construction, to which all other canons are subordinate, is to ascertain and give effect to the true intent and meaning of the

legislature. *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 81, 630 N.E.2d 820, 822 (1994). Courts should first attempt to ascertain the intent of the legislature from the plain language of the statute. *Solich*, 158 Ill. 2d at 81, 630 N.E.2d at 822.

■ Dukes argues that a plain reading of section 7(b—5) of the Parentage Act does not require that a DNA test be performed prior to the filing of a petition. We disagree. Section 7 (b—5) of the Parentage Act provides:

> "An action to declare the non-existence of the parent and child relationship may be brought subsequent to an adjudication of paternity in any judgment by the man adjudicated to be the father pursuant to the presumptions in Section 5 of this Act *if, as a result of deoxyribonucleic acid (DNA) tests, it is discovered that the man adjudicated to be the father is not the natural father of the child.* Actions brought by the adjudicated father shall be brought by verified complaint. If, as a result of deoxyribonucleic acid (DNA) tests, the plaintiff is determined not to be the father of the child, the adjudication of paternity and any orders regarding custody, visitation, and future payments of support may be vacated." (Emphasis added.) 750 ILCS 45/7(b—5) (West 1998).

Dukes contends that had the legislature intended to require DNA testing prior to filing a petition, it could have specified that no action shall be brought unless a DNA test is completed prior to the filing of the action. Since the legislature did not so specify, Dukes argues, the trial court erred when it dismissed his petition.

Construction of section 7(b—5) of the Parentage Act (750 ILCS 45/7(b—5) (West 1998)) is a question of first impression. Section 7(b—5) was added to the Parentage Act in 1998. Pub. Act 90—715, eff. August 7, 1998 (adding 750 ILCS 45/7(b—5)). Prior to passage of this amendment, a man adjudicated to be the father of a child could not challenge the adjudication even where subsequent DNA evidence conclusively established nonpaternity. See *In re Paternity of Rogers*, 297 Ill. App. 3d 750, 697 N.E.2d 1193 (1998). Section 7(b—5) provides a new cause of action allowing an adjudicated father to challenge the adjudication "if" DNA tests establish nonpaternity. However, we construe section 7(b—5) to provide such a cause of action only if DNA testing has established, *prior to the filing of the petition*, that the adjudicated father is not the natural father. Section 7(b—5) does not authorize such action to be brought in the absence of DNA testing, nor does it provide a mechanism for compelling the mother or child to undergo DNA testing.

■ Dukes complains that requiring a DNA test precedent to the

filing of a petition provides no relief to presumed fathers who have strong reason to doubt paternity but no means to compel DNA testing. He argues that section 8(a)(4) of the Parentage Act (750 ILCS 45/8(a)(4) (West 1998)) supports his position by giving the trial court authority to require recalcitrant mothers and children to submit to DNA testing. If the court can require the submission to DNA tests after a petition is filed, Dukes argues, it would stand to reason that the petition could be brought prior to the taking of DNA tests. Dukes misreads this statutory provision.

Section 8(a)(4) provides, *inter alia*, that section 7(b—5) actions may not be brought:

"more than 6 months after the effective date of this amendatory Act of 1998 or more than 2 years after the petitioner obtains actual knowledge of relevant facts, whichever is later. *The 2-year period shall not apply to periods of time where the natural mother or the child refuses to submit to deoxyribonucleic acid (DNA) tests.*" (Emphasis added.) 750 ILCS 45/8(a)(4) (West 1998).

Contrary to Dukes' assertion, nothing in this section authorizes the court to require submission to DNA testing. The sole and plain purpose of the highlighted portion of section 8(a)(4) is to toll the two-year limitations period in cases where an adjudicated father is prevented by the noncooperation of the mother or child from securing the necessary DNA results. If the court could compel testing, such relief from the statute of limitations would be wholly unnecessary.

Assuming, *arguendo*, that the words of the statute are unclear, we may consult legislative history as an aid to construction. *In re B.C.*, 176 Ill. 2d 536, 542-43, 680 N.E.2d 1355, 1359 (1997). The legislative history of Public Act 90—715 further confirms that DNA evidence is a necessary prerequisite to the filing of a petition. During the floor debate, the bill's Senate sponsor stated that the legislation "does not force anybody to have a DNA test." 90th Ill. Gen. Assem., Senate Proceedings, April 2, 1998, at 51 (statements of Senator Fawell). The House sponsor of the legislation explained that "[y]ou have to have the test to know whether you can file or not." 90th Ill. Gen. Assem., House Proceedings, May 5, 1998, at 34 (statements of Representative Pankau).

■ We conclude that section 7(b—5) of the Parentage Act creates a limited exception to the rule that an adjudicated father is barred from challenging the adjudication. See *In re Paternity of Rogers*, 297 Ill. App. 3d 750, 697 N.E.2d 1193 (1998). We hold that section 7(b—5) of the Parentage Act provides a cause of action if, as a result of DNA tests obtained prior to the filing of the petition, it is discovered that the man adjudicated to be the father is not the natural father of the

child. Dukes failed to allege DNA test results excluding him as the father of Taylor and therefore has failed to state a cause of action. His petition, consequently, was properly dismissed. Whether a broader exception is merited is a question for the legislature, not for this court.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Bureau County is affirmed.

Affirmed.

SLATER, P.J., and LYTTON, J., concur.