797 N.E.2d 172 (2003)
343 Ill. App.3d 208
277 Ill.Dec. 825
The PEOPLE of the State of Illinois ex rel. The DEPARTMENT OF PUBLIC AID and Valerie Dawson, Petitioner-Appellee,
v.
Romel C. SMITH, Respondent-Appellant.
No. 2-03-0418.
Appellate Court of Illinois, Second District.
September 5, 2003.
*173 Jeffrey S. Harris, Law Offices of Jeffrey S. Harris, G. Paul McFarling, Attorneys Serving You, LLC, Maywood, for Romel C. Smith.
Joseph E. Birkett, DuPage County State's Attorney, Wheaton, Lisa Madigan, Attorney General, Gary S. Feinerman, Solicitor General, Janon E. Fabiano, Diane M. Potts, Assistant Attorneys General, Chicago, for the People ex rel. Illinois Department of Public Aid.
Justice GILLERAN JOHNSON delivered the opinion of the court:
The respondent, Romel Smith, appeals from the March 12, 2003, order of the circuit court of Du Page County dismissing his verified amended complaint to declare the nonexistence of a parent and child relationship pursuant to section 7(b-5) of the Illinois Parentage Act of 1984 (the Act) (750 ILCS 45/7(b-5) (West 2002)). We reverse and remand for additional proceedings.
On October 9, 1997, Valerie Dawson gave birth to Kendra Smith, the minor child who is the subject of this litigation. On October 11, 1997, the respondent signed a voluntary acknowledgment of paternity. In this acknowledgment, the respondent waived his right to request DNA testing and accepted the obligation to provide child support.
On December 3, 1997, the State filed a complaint against the respondent to establish child support. An order for support was subsequently entered against the respondent on May 4, 1998, requiring him to pay weekly child support of $38.18.
On April 29, 2002, the respondent engaged DNA Diagnostics Center to perform testing on himself and the child. The results of the DNA test were certified on May 10, 2002. The test results showed that the respondent's probability of parentage was 0% and, therefore, that the respondent was not the child's biological father.
On June 18, 2002, the respondent filed a pro se petition to terminate his child support obligation because he was not the biological father of the child. On September 5, 2002, the State filed a motion pursuant to section 2-615 of the Code of Civil Procedure (the Code) (735 ILCS 5/2-615 (West 2002)) to strike the respondent's petition.
On October 31, 2002, upon retaining counsel, the respondent filed a verified amended complaint to establish nonpaternity pursuant to section 7(b-5) of the Act (750 ILCS 45/7(b-5) (West 2002)). In his amended complaint, the respondent alleged that he signed the voluntary acknowledgment of paternity based on Dawson's representations that he was the child's biological father. He explained that he entered active military duty on or about July 8, 1998, just nine months after the *174 child was born. He remained in the service until approximately December 1999. During that time period, he saw the child on only a few occasions. He never had a close relationship with the child or "reasonable and liberal" visitation. The complaint also alleged that in about March 2002, he began to have doubts about his paternity of the child because the child did not share any of his physical characteristics. Consequently, he arranged for a DNA test to be performed on himself and the child. The complaint alleged that the DNA test results, certified on May 10, 2002, showed that he was not the child's biological father. Thus, the complaint requested, among other things, that the court declare the nonexistence of the parent and child relationship between the respondent and the child.
On December 24, 2002, the State filed a motion to dismiss the respondent's verified amended complaint pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2002)). In its motion, the State argued that, since the respondent signed a voluntary acknowledgment of paternity, his only avenue to challenge paternity was on the grounds of fraud, duress, or material mistake of fact, in a petition filed pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2002)). As such, the State requested that the respondent's amended complaint be dismissed because it did not comply with section 2-1401 of the Code.
On January 9, 2003, the respondent filed a brief in support of his amended complaint. In his brief, the respondent argued that section 7(b-5) of the Act (750 ILCS 45/7(b-5) (West 2002)) created a new cause of action allowing an adjudicated father to challenge the existence of a parent and child relationship if subsequent DNA tests determined that the adjudicated father was not the natural father. He further argued that his cause of action under section 7(b-5) (750 ILCS 45/7(b-5) (West 2002)) was proper because he had been adjudicated to be the child's father pursuant to the presumptions listed in section 5 of the Act (750 ILCS 45/5 (West 2002)). Additionally, prior to filing his complaint, he obtained DNA test results proving that he was not the child's natural father. He subsequently filed his complaint within two years of obtaining actual knowledge of the relevant facts, in compliance with the time constraints found in section 8(a)(4) of the Act (750 ILCS 45/8(a)(4) (West 2002)).
On March 12, 2003, following a hearing, the trial court dismissed the respondent's verified amended complaint because it was not based on fraud, duress, or mistake of fact, and was not in the form of a section 2-1401 petition. The trial court explained that the law regarding the preclusive effect of voluntary acknowledgments of paternity was very clear. Under section 5(b) of the Act (750 ILCS 45/5(b) (West 2002)), a voluntary acknowledgment of paternity is conclusive, unless the acknowledgment is rescinded within 60 days under the process provided in section 12 of the Vital Records Act (410 ILCS 535/12 (West 2002)). As such, the trial court explained that after 60 days, a challenge to a voluntary acknowledgment of paternity must be based on fraud, duress, or material mistake of fact under section 6(d) of the Act (750 ILCS 45/6(d) (West 2002)) and must come in the form of a section 2-1401 petition (735 ILCS 5/2-1401 (West 2002)). The trial court further stated that allowing the respondent to bring a cause of action under section 7(b-5) of the Act (750 ILCS 45/7(b-5) (West 2002)) would render the acknowledgment provision of the Act meaningless. Thereafter, the respondent filed a timely notice of appeal.
On appeal, the respondent argues that the trial court erred in dismissing his verified amended complaint. The respondent *175 argues that a man adjudicated to be the father of a child pursuant to any of the presumptions contained in section 5 of the Act (750 ILCS 45/5 (West 2002)) may bring a cause of action to declare the nonexistence of the parent and child relationship if he meets the requirements contained in section 7(b-5) of the Act (750 ILCS 45/7(b-5) (West 2002)), even though he signed a voluntary acknowledgment of paternity which he did not rescind.
Section 7(b-5) specifically provides:
"An action to declare the nonexistence of the parent and child relationship may be brought subsequent to an adjudication of paternity in any judgment by the man adjudicated to be the father pursuant to the presumptions in Section 5 of this Act if, as a result of deoxyribonucleic acid (DNA) tests, it is discovered that the man adjudicated to be the father is not the natural father of the child. Actions brought by the adjudicated father shall be brought by verified complaint. If, as a result of the deoxyribonucleic acid (DNA) tests, the plaintiff is determined not to be the father of the child, the adjudication of paternity and any orders regarding custody, visitation, and future payments of support may be vacated." 750 ILCS 45/7(b-5) (West 2002).
Thus, under section 7(b-5), where DNA evidence establishes nonpaternity, a man adjudicated to be the father of a child may challenge this prior judgment if he was adjudicated to be the father "pursuant to the presumptions of Section 5" of the Act. Section 5 of the Act provides:
"(a) A man is presumed to be the natural father of a child if:
(1) he and the child's natural mother are or have been married to each other * * * and the child is born or conceived during such marriage;
(2) after the child's birth, he and the child's natural mother have married each other * * * and he is named * * * as the child's father on the child's birth certificate;
(3) he and the child's natural mother have signed an acknowledgment of paternity in accordance with rules adopted by the Illinois Department of Public Aid under Section 10-17.7 of the Illinois Public Aid Code; or
(4) he and the child's natural mother have signed an acknowledgment of parentage * * * in accordance with Section 12 of the Vital Records Act." 750 ILCS 45/5(a) (West 2002).
Consequently, at issue in the present case is the proper procedural means by which a presumed father may challenge a voluntary acknowledgment of paternity. In making this determination, we must properly interpret section 7(b-5) along with the other relevant provisions of the Act. In interpreting statutes, a court's primary goal is to ascertain and give effect to the true intent of the legislature. In re Marriage of Kates, 198 Ill.2d 156, 163, 260 Ill.Dec. 309, 761 N.E.2d 153 (2001). The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning. Kates, 198 Ill.2d at 163, 260 Ill.Dec. 309, 761 N.E.2d 153. When the plain language of the statute is clear and unambiguous, the legislative intent that is discernible from this language must prevail, and no resort to other interpretive aids is necessary. Kates, 198 Ill.2d at 163, 260 Ill. Dec. 309, 761 N.E.2d 153. Statutes should be read as a whole with all relevant parts considered, and they should be construed, if possible, so that no term is rendered superfluous or meaningless. Kates, 198 Ill.2d at 163, 260 Ill.Dec. 309, 761 N.E.2d 153. Statutory interpretation is a question of law and is therefore reviewed de novo.
*176 Additionally, a motion to dismiss pursuant to section 2-619 of the Code admits all well-pleaded facts and reasonable inferences drawn therefrom. Peetoom v. Swanson, 334 Ill.App.3d 523, 526, 268 Ill. Dec. 305, 778 N.E.2d 291 (2002). On appeal, the reviewing court must consider whether there were genuine issues of material fact that precluded dismissal or, absent such facts, whether dismissal was proper as a matter of law. Keef v. Widuch, 321 Ill.App.3d 571, 576, 254 Ill.Dec. 580, 747 N.E.2d 992 (2001). As such, we review de novo the trial court's ruling on a section 2-619 motion. In re Marriage of Lubbs, 313 Ill.App.3d 968, 969, 246 Ill.Dec. 674, 730 N.E.2d 1139 (2000).
Several other courts have previously interpreted section 7(b-5), which was added to the Act on August 7, 1998, and held that it "`provides a new cause of action allowing an adjudicated father to challenge the adjudication "if" DNA tests establish nonpaternity.'" Kates, 198 Ill.2d at 162, 260 Ill.Dec. 309, 761 N.E.2d 153, quoting Lubbs, 313 Ill.App.3d at 970, 246 Ill.Dec. 674, 730 N.E.2d 1139. In allowing such a challenge, section 7(b-5) essentially runs counter to the strong judicial policy favoring the finality of judgments. Kates, 198 Ill.2d at 169-70, 260 Ill.Dec. 309, 761 N.E.2d 153. Section 7(b-5) of the Act creates a limited exception to the rule that an adjudicated father is barred from challenging the adjudication. Lubbs, 313 Ill. App.3d at 971, 246 Ill.Dec. 674, 730 N.E.2d 1139. Prior to this amendment, a man adjudicated to be the father of a child could not challenge the adjudication even if subsequent DNA evidence conclusively established nonpaternity. Kates, 198 Ill.2d at 162, 260 Ill.Dec. 309, 761 N.E.2d 153. In enacting section 7(b-5), the Illinois legislature determined that not every adjudicated father would be able to file an action to declare the nonexistence of the parent and child relationship. Instead, only those who first obtained a DNA test disproving paternity could bring such a challenge. Kates, 198 Ill.2d at 170, 260 Ill.Dec. 309, 761 N.E.2d 153.
Furthermore, in Jackson v. Newsome, 325 Ill.App.3d 372, 259 Ill.Dec. 219, 758 N.E.2d 342 (2001), the court found that a man presumed to be the father under section 5(a)(4) of the Act had standing to bring a cause of action to declare the nonexistence of the parent and child relationship under section 7(b-5) of the Act. Jackson, 325 Ill.App.3d at 381, 259 Ill.Dec. 219, 758 N.E.2d 342. The court construed section 7(b-5), which refers to the presumptions in section 5(a) of the Act, as drawing a distinction between adjudications based on presumptions of paternity, which may be challenged with DNA evidence, and other adjudications, such as those based on blood tests, where such a challenge would be inappropriate. Jackson, 325 Ill.App.3d at 380, 259 Ill.Dec. 219, 758 N.E.2d 342. Under this approach, the court found that section 7(b-5) would be applicable to an adjudication of paternity resulting from circumstantial inferences raising a presumption, but would not be applicable to a judicial determination predicated on scientific evidence. Jackson, 325 Ill.App.3d at 380, 259 Ill.Dec. 219, 758 N.E.2d 342.
Consequently, we believe that a presumed father may challenge a voluntary acknowledgment of paternity under section 7(b-5) of the Act. Giving section 7(b-5) of the Act its plain and ordinary meaning, the prerequisites for a section 7(b-5) action include not only that a man is adjudicated to be the father, but also that this adjudication is made "pursuant to the presumptions in Section 5 of this Act." 750 ILCS 45/7(b-5) (West 2002). As previously noted, under section 5(a)(3) of the Act (750 ILCS 45/5(a)(3) (West 2002)), a man is *177 presumed to be the father if he and the child's natural mother have signed a voluntary acknowledgment of paternity. Additionally, section 6(b) of the Act provides that paternity established through a voluntary acknowledgment has the "full force and effect of a judgment entered under this Act." 750 ILCS 45/6(b) (West 2002). Finally, section 7(b-5) provides that a man adjudicated to be the father, pursuant to the presumptions in section 5 of the Act, may bring a cause of action to declare the nonexistence of the parent and child relationship if DNA tests establish nonpaternity. See 750 ILCS 45/5, 7(b-5) (West 2002); Kates, 198 Ill.2d at 162, 260 Ill.Dec. 309, 761 N.E.2d 153.
As such, we hold that the respondent was adjudicated to be the father of the child pursuant to the Act when he signed the voluntary acknowledgment of paternity. See 750 ILCS 45/6(b) (West 2002); Department of Public Aid ex rel. Howard v. Graham, 328 Ill.App.3d 433, 436, 262 Ill.Dec. 652, 766 N.E.2d 272 (2002) (if a voluntary acknowledgment of paternity is not rescinded within 60 days, it has the full force and effect of a judgment). Furthermore, the voluntary acknowledgment of paternity in this case is an adjudication pursuant to the presumption in section 5(a)(3) of the Act. See 750 ILCS 45/5(a)(3) (West 2002). Finally, the respondent herein incorporated DNA evidence, showing that he is not the natural father of the child, as an exhibit to his verified amended complaint. As such, based on the plain language of section 7(b-5) of the Act, the respondent met the requirements contained in the statute. We therefore hold that he may bring a cause of action to declare the nonexistence of the parent and child relationship pursuant to section 7(b-5) of the Act. Consequently, we reverse the trial court's order dismissing his complaint and remand for additional proceedings.
In so ruling, we note that the State, in arguing that a voluntary acknowledgment of paternity may not be challenged under section 7(b-5) of the Act, relies on section 6(d) of the Act. Section 6(d) provides:
"A signed acknowledgment of paternity entered under this Act may be challenged in court only on the basis of fraud, duress, or material mistake of fact * * *." 750 ILCS 45/6(d) (West 2002).
Consequently, the State argues that since section 6(d) states that a signed acknowledgment of paternity may be challenged in court only on the basis of fraud, duress, or material mistake of fact, the challenge provided by section 7(b-5) of the Act is not applicable to voluntary acknowledgments of paternity. We disagree. In construing a statute, a court must ascertain and give effect to the legislature's intent in enacting the statute. Chavda v. Wolak, 188 Ill.2d 394, 402, 242 Ill.Dec. 606, 721 N.E.2d 1137 (1999). Where two legislative enactments allegedly conflict, this court has a duty to construe those statutes in a manner that avoids an inconsistency and gives effect to both enactments, if such a construction is reasonably possible. Chavda, 188 Ill.2d at 402, 242 Ill.Dec. 606, 721 N.E.2d 1137. The legislature is presumed to have intended that statutes relating to a single subject and controlled by a single policy will be consistent and harmonious, and any apparent conflicts between two such statutes will be reconciled if possible. Chavda, 188 Ill.2d at 402, 242 Ill. Dec. 606, 721 N.E.2d 1137.
Applying these principles to sections 6(d) and 7(b-5) of the Act, we believe that section 7(b-5) applies to voluntary acknowledgments of paternity. Section 6 was part of the original Act, which became effective July 1, 1985. Section 7(b-5) was an amendment to the Act that became effective August 7, 1998. Although section 6(d) continues to set forth the rule that *178 voluntary acknowledgments of paternity may be challenged only on the basis of fraud, duress, or mistake of fact, it is evident that section 7(b-5) was intended to create a limited exception to that rule. The Act was amended by the addition of section 7(b-5) specifically to allow an adjudicated father to collaterally attack this previous adjudication if subsequent DNA tests established that he was not the father. Jackson, 325 Ill.App.3d at 383, 259 Ill.Dec. 219, 758 N.E.2d 342; Lubbs, 313 Ill.App.3d at 970, 246 Ill.Dec. 674, 730 N.E.2d 1139. Consequently, to avoid inconsistency and give effect to the plain language of both sections 6(d) and 7(b-5), we hold that section 7(b-5) applies to voluntary acknowledgments of paternity. See Chavda, 188 Ill.2d at 402, 242 Ill.Dec. 606, 721 N.E.2d 1137. Nonetheless, we agree that the current language in section 6(d) is confusing, and we hope the legislature would consider amending this language to eliminate the confusion.
Furthermore, the State argues that, if the General Assembly intended section 7(b-5) to apply to challenges to voluntary acknowledgments of paternity, it would have used the same language as in section 7(b) of the Act. Section 7(b) states that a "man presumed to be the father under subdivision (a)(1) or (a)(2) of Section 5" of the Act may bring an action to declare the nonexistence of the parent and child relationship. 750 ILCS 45/7(b) (West 2002). Consequently, the State argues that, if applicable to voluntary acknowledgments, the language of section 7(b-5) would have generically provided relief for any man presumed to be the father under section 5 of the Act. However, it points out that the actual language of section 7(b-5) provides relief to a man "adjudicated to be the father pursuant to the presumptions in Section 5" of the Act. 750 ILCS 45/7(b-5) (West 2002). We do not find this argument persuasive. If the legislature did not want section 7(b-5) to apply to voluntary acknowledgments of paternity, it could have used the exact same language as in section 7(b). Section 7(b) specifically refers to sections 5(a)(1) and 5(a)(2) of the Act and, therefore, omits any reference to sections 5(a)(3) and 5(a)(4) of the Act, which relate to voluntary acknowledgments. Consequently, the fact that the legislature used different language in sections 7(b) and 7(b-5) indicates that it intended different results. See In re K.C., 186 Ill.2d 542, 550, 239 Ill.Dec. 572, 714 N.E.2d 491 (1999). Therefore, we believe that section 7(b-5) includes the presumptions in sections 5(a)(3) and 5(a)(4) of the Act, relating to voluntary acknowledgments.
Finally, the State argues that the terms "adjudicated" and "adjudication" in section 7(b-5) are terms that refer to judicial proceedings. The State argues that these terms are inapplicable to a father whose legal relationship was founded on a voluntary acknowledgment of paternity because there is no judgment entered in such a case. We find, however, that the State's interpretation of these terms would render section 7(b-5) entirely meaningless. It is well settled that statutes should be construed so that no term is rendered superfluous or meaningless. Kates, 198 Ill.2d at 167, 260 Ill.Dec. 309, 761 N.E.2d 153. If the terms "adjudication" and "adjudicated" required a judgment to be entered, then none of the presumptions in section 5 of the Act would satisfy section 7(b-5). Under section 5(a)(1), a man is presumed to be the father if the child is born or conceived during marriage. In section 5(a)(2), a man is presumed to be the father if after the child's birth the man marries the child's mother and he is named as the father on the child's birth certificate. As previously noted, sections 5(a)(3) and 5(a)(4) relate to voluntary acknowledgments. *179 As is evident, in none of these instances will a judgment necessarily ever be entered. Since the State's interpretation would render section 7(b-5) entirely meaningless, we must disagree with its interpretation. See Kates, 198 Ill.2d at 167, 260 Ill.Dec. 309, 761 N.E.2d 153. Moreover, section 6(b) of the Act specifically states that a voluntary acknowledgment of parentage "has the full force and effect of a judgment entered under this Act." (750 ILCS 45/6(b) (West 2002)).
We also note that the trial court was concerned that allowing the respondent to bring a cause of action under section 7(b-5) of the Act would render the acknowledgment provision of the Act meaningless. We do not believe that allowing the respondent to challenge his parentage under section 7(b-5) of the Act would have such an effect. The cause of action created by section 7(b-5) of the Act is very limited. Section 7(b-5) is designed to provide a remedy for a person who has already been determined by the court to be the father of the child based on certain presumptions in the Act. When those presumptions are rebutted by DNA findings, the father is given a specific basis and time frame to seek reversal of the earlier judicial determination of paternity. Donath v. Buckley, 319 Ill.App.3d 83, 87, 253 Ill.Dec. 103, 744 N.E.2d 385 (2001). Section 7(b-5) does not authorize such an action to be brought in the absence of DNA testing, nor does it provide a mechanism for compelling the mother or child to undergo DNA testing. Lubbs, 313 Ill.App.3d at 970, 246 Ill.Dec. 674, 730 N.E.2d 1139. Consequently, because the cause of action created by section 7(b-5) is so limited, we do not believe that it renders the acknowledgment provision of the statute meaningless.
For the foregoing reasons, the judgment of the circuit court of Du Page County is reversed, and the cause is remanded for additional proceedings consistent with this opinion.
Reversed and remanded.
O'MALLEY and GROMETER, JJ., concur.