DANIEL D. DONATH, Plaintiff-Appellee, v. DEANNA BUCKLEY, Defendant-Appellant.

Third District   No. 3—00—0398

Opinion filed February 20, 2001.

Thomas V. Hoehne (argued), of Peoria, for appellant.

Joseph M. Gibson (argued), of Peoria, for appellee.

JUSTICE McDADE delivered the opinion of the court:

Defendant, Deanna Buckley (n/k/a Deanna Cady), appeals from the April 17, 2000, order in which the trial court denied her petition to declare the nonexistence of the parent/child relationship on the basis that the petition was barred by the statute of limitations and required the parties to either reach an agreement or set a hearing on the issue of an appropriate visitation schedule. The court finds that the trial court applied the appropriate statute of limitations. The decision is affirmed.

## FACTS

On October 18, 1996, the plaintiff, Daniel Donath (Daniel), filed a petition to establish a parent and child relationship by consent of the parents. This petition was signed by the defendant, Deanna Buckley. On November 27, 1996, the trial court entered an order granting the petition and declaring that a parent-child relationship existed between 14-month-old Katelin Donath (Katelin) and Daniel. This order gave permanent care, custody and control of Katelin to Deanna, but allowed Daniel visitation rights.

On February 1, 1999, Deanna filed a petition to declare the nonexistence of the parent/child relationship (Petition), stating that Daniel was not Katelin's biological father. On March 2, 1999, Daniel petitioned the court for enforcement of his previously granted visitation and answered Deanna's Petition, averring his belief that he was Katelin's biological father. A deoxyribonucleic acid (DNA) test was ordered on April 13, 1999, and completed on May 7, 1999. The test found the probability of biological paternity to be zero percent (0%).

On September 22, 1999, Deanna petitioned the court to vacate its earlier order granting visitation to Daniel. The petition was denied on December 9, 1999. In the meantime, Daniel had filed a petition for enforcement of the visitation on December 6, 1999. In response to this petition, Deanna filed a motion to dismiss, stating that Daniel had always known he was not Katelin's biological father. In response to this motion, Daniel admitted, apparently because of the DNA results, that he did not have any statutory right to visitation, but pled affirmatively that Illinois courts have allowed visitation by a nonparent over a parent's objection, where it was in the best interest of the child. He contended that he had built a relationship with Katelin, who was now three years old, and that maintenance of that relationship was in her best interest.

Hearings were held on March 3 and April 14, 2000, on Deanna's Petition. Deanna testified that she and Daniel knew from the time she was pregnant that he was not the biological father of Katelin and that she had done nothing to deceive him. However, Daniel testified that he always believed he was Katelin's biological father and had no reason to question his belief until he read court documents challenging that status in February 1999. It was also alleged that Daniel had improperly touched Katelin and had physically abused Deanna. Daniel denied any improper touching of Katelin and testified that the Department of Children and Family Services (DCFS) had ruled the claim was "unfounded." Daniel did not deny physically abusing Deanna.

Daniel also testified that he had resided with Deanna for several periods of time and that he visited Katelin every other weekend and every other holiday for the first year of her life when he was not residing with Deanna. He also testified that he participated in activities with Katelin, celebrated occasions such as her first birthday, her first Halloween, her first Christmas, and her first Easter. Daniel called his sister and brother-in-law, with whom he was residing, to testify on his behalf. They both testified that Daniel was a good father who actively participated in the care of Katelin and that Katelin referred to him as "Daddy."

On April 17, 2000, the trial court entered an order denying Deanna's Petition, stating that the challenge was barred by the statute of limitations. The order required the parties to set a hearing on the issue of visitation if they could not agree on an appropriate schedule. The court directed that Daniel's visitation with Katelin should initially be supervised.

The issues raised by Deanna on appeal are: (1) whether the trial court properly denied her Petition as barred by the applicable statute of limitations, and (2) whether the court complied with statutory provisions and case law in allowing Daniel visitation with Katelin.

## ANALYSIS

The trial court's interpretation of a statute is reviewed *de novo*. *Russell v. Department of Natural Resources*, 183 Ill. 2d 434, 701 N.E.2d 1056 (1998).

### The Appropriate Statute of Limitations

The Illinois Parentage Act of 1984 (750 ILCS 45/7 (West 1998)) governs the determination of father and child relationships and of who may bring actions regarding that relationship. Section 8 of the same act addresses the appropriate statute of limitations for any given action under this act.

■ Section 7(b) provides:

"An action to declare the non-existence of the parent and child relationship may be brought by the child, the natural mother, or a man presumed to be the father under subdivision (a)(1) or (a)(2) of Section 5 of this Act. Actions brought by the child, the natural mother or a presumed father shall be brought by verified complaint." 750 ILCS 45/7(b) (West 1998).

Section 7(b—5) provides:

"An action to declare the non-existence of the parent and child relationship may be brought subsequent to the adjudication of paternity in any judgment by the man adjudicated to be the father pursuant to the presumptions in Section 5 of this Act, if, as a result of deoxyribonucleic acid (DNA) tests, it is discovered that the man adjudicated to be the father is not the natural father of the child. Actions brought by the adjudicated father shall be brought by verified complaint. If, as a result of the deoxyribonucleic acid (DNA) tests, the plaintiff is determined not to be the father of the child, the adjudication of paternity and any orders regarding custody, visitation, and future payments of support may be vacated." 750 ILCS 45/7(b—5) (West 1998).

Section 8(a)(3) provides:

"An action to declare the non-existence of the parent and child relationship brought under subsection (b) of Section 7 of this Act shall be barred if brought later than two years after the petitioner obtains knowledge of relevant facts." 750 ILCS 45/8(a)(3) (West 1998).

Section 8(a)(4) provides:

"An action to declare the non-existence of the parent and child relationship brought under subsection (b—5) of Section 7 of this Act shall be barred if brought more than six months after the effective date of the Amendatory Act of 1998, or more than two years after the petitioner obtains actual knowledge of the relevant facts, whichever is later." 750 ILCS 45/8(a)(4) (West 1998).

■ Section 7(b) of the Illinois Parentage Act governs the circumstances under which a natural mother may challenge paternity. The statute of limitations for her challenge is found in section 8(a)(3), providing that the action must be brought no later than two years after the petitioner obtains knowledge of the relevant facts. In this case Deanna testified that she always knew that Daniel was not Katelin's father. Yet, Katelin was over three years old by the time Deanna filed her Petition on February 1, 1999. Thus, Deanna did not comply with section 8(a)(3), so any action by her pursuant to section 7(b) was barred by the statute of limitations.

■ Deanna asserts, however, that her Petition was brought pursuant to section 7(b—5) and that the appropriate statute of limitations

is section 8(a)(4). Both parties agree that her Petition was filed within six months of the amendatory act of 1998.

The court notes initially that Deanna filed her Petition on February 1, 1999. Under the plain language of the statute, no person would have standing to file an action under section 7(b—5) until after the DNA test had been completed. *In re Marriage of Lubbs*, 313 Ill. App. 3d 968, 730 N.E.2d 1139 (2000). In this case, the DNA test was not completed until May 7, 1999. Thus, Deanna's Petition, even if otherwise proper, was premature.

■ Of far greater import, however, according to the plain language of section 7(b—5), Deanna lacks standing to bring an action under that section. She is clearly not "the man adjudicated to be the father." 750 ILCS 45/7(b—5) (West 1998). Deanna attacks the constitutionality of this restriction, claiming that to deny her cause of action on this basis would be discrimination on the basis of gender and a denial of due process guaranteed her by the Illinois and United States Constitutions. This argument has no merit.

Section 7(b—5) is designed to provide a remedy for a person who has already been determined by the court to be the father of the child based on certain presumptions in the Illinois Parentage Act. When those presumptions are rebutted by DNA findings, the "father" is given a specific basis and time frame to seek reversal of the earlier judicial determination of paternity.

A mother who believes the man to be her child's father and succeeds in having him so adjudicated has the same right as the father to challenge paternity in the face of contrary DNA findings. Her claim would, however, still be brought pursuant to section 7(b). The communication of the test results would be the first time the mother "obtains knowledge of relevant facts" showing the man is not, in fact, the father. She then has two years to bring an action to declare the nonexistence of a parent-child relationship.

That option fails for Deanna only because she testified that she has known since before Katelin's birth that Daniel was not the father. She is statutorily barred from challenging paternity, not because of her gender but because of that avowed knowledge. Moreover, unless Daniel seeks to deny the relationship, Deanna is legally bound by the judicial declaration of paternity that she and Daniel secured by agreement and consent.

## Visitation for the Defendant

Deanna argues that the court granted Daniel visitation rights contrary to the terms and provisions of the Illinois Parentage Act, Uniform Child Custody Jurisdiction Act (750 ILCS 35/1 *et seq.* (West

1998)), and the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 *et seq.* (West 1998)). However, based on the above ruling, Deanna is foreclosed from raising this argument.

Since the statute of limitations bars Deanna's Petition and Daniel has no desire to sever his ties with Katelin, the November 1996 court order is controlling. In October 1996, Daniel filed and Deanna signed a petition to establish parent and child relationship by consent of the parents. On November 27, 1996, the court entered an order finding, on the basis of parental consent, that Daniel was the father of Katelin. A visitation schedule was entered on April 25, 1997, and modified in an agreed order, signed by counsel for Daniel and Deanna, on July 14, 1998. Thus, Daniel did have legal standing to enforce visitation, and the court did not err in recognizing his rights and granting him visitation pursuant to the prior order.

Deanna raised the allegation of sexual abuse of the minor child by the plaintiff as an additional reason to deny Daniel visitation. However, that allegation was investigated by DCFS and determined to be unfounded. Therefore, that cannot be used as a basis for the court to modify the visitation arrangement.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Peoria County denying the defendant's petition to declare the nonexistence of the parent/child relationship on the basis that the Petition was barred by the statute of limitations and requiring the development of an appropriate visitation schedule is affirmed.

Affirmed.

HOMER, P.J., and BRESLIN, J., concur.