# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*In re Parentage of H.L.B.*, 2012 IL App (4th) 120437

---

| | |
|---|---|
| Appellate Court Caption | In re: the Parentage of H.L.B., a Minor, HEATHER L. BOARD, Petitioner-Appellee, v. BRADLEY A. ENTRICAN, Respondent-Appellant, and THE DEPARTMENT OF HEALTHCARE AND FAMILY SERVICES, Intervenor-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-12-0437 |
| Argued<br>Filed | September 5, 2012<br>September 27, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Respondent lacked standing to file a petition to declare the nonexistence of a parent-child relationship under section 7(b-5) of the Parentage Act of 1984, the action was barred by the two-year statute of limitations, and his action was barred as a matter of *res judicata.* |
| Decision Under Review | Appeal from the Circuit Court of Edgar County, No. 11-F-16; the Hon. Matthew L. Sullivan, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | J. Steven Ayres (argued), of Cox, Phillips, Weber, Tedford, Heap & Ayres, P.C., of Robinson, for appellant. |
| | |
| | Bruce Baber (argued), of Paris, for appellee Heather L. Board. |
| | |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and John P. Schmidt (argued), Assistant Attorney General, of counsel), for appellee Department of Healthcare and Family Services. |
| | |
| Panel | JUSTICE COOK delivered the judgment of the court, with opinion. Justices Appleton and Knecht concurred in the judgment and opinion. |

## OPINION

¶ 1   In 2001, petitioner, Heather L. Board, accused respondent, Bradley A. Entrican, of being the father of her son, H.L.B. On April 18, 2001, the Illinois Department of Healthcare and Family Services (Department) entered a default order of paternity against Bradley. On January 18, 2012, Bradley filed a petition to declare the nonexistence of a parent-child relationship under section 7(b-5) of the Illinois Parentage Act of 1984 (Parentage Act) (750 ILCS 45/7(b-5) (West 2010)). Heather and the Department each filed a motion for involuntary dismissal of the petition under section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2010)). The trial court granted the motions, finding that (1) Bradley did not have standing to file the action, (2) the action was barred by the running of the statute of limitations, and (3) the action was barred as a matter of *res judicata*. Bradley appealed, and we affirm.

¶ 2                    I. BACKGROUND

¶ 3   On September 15, 1999, Heather gave birth to H.L.B. Prior to H.L.B.'s birth, Heather had been involved in a sexual relationship with Bradley. Heather and Bradley were never married.

¶ 4   On March 17, 2001, the Department served Bradley with a notice of alleged paternity and support obligation. The notice provided that Bradley had been identified by Heather as H.L.B.'s father. The notice also stated that Bradley must attend an interview with the Department on April 18, 2001. Finally, the notice warned that if Bradley failed to appear for the scheduled interview he may be "LEGALLY DECLARED TO BE THE FATHER OF THE CHILD NAMED IN THIS NOTICE AND ORDERED TO PAY SUPPORT FOR THE CHILD FROM BIRTH UNTIL THE CHILD IS AT LEAST 18 YEARS OLD."

¶ 5    On April 18, 2001, Bradley failed to appear for the scheduled interview. As a result, the Department entered an administrative paternity order finding Bradley in default and adjudicating him H.L.B.'s legal father.

¶ 6    On May 30, 2001, Bradley sent a letter to the Department appealing the default order and requesting genetic testing. The Department offered Bradley genetic testing and, as a result, he withdrew his appeal.

¶ 7    On approximately June 12, 2001, Bradley signed an agreement to be bound by the results of genetic testing (hereinafter referred to as the 2001 agreement). The 2001 agreement provided that if the genetic testing results showed a combined paternity index of at least 500 to 1, then the Department would enter an administrative paternity order finding Bradley to be H.L.B.'s father. However, if Bradley failed to appear for the scheduled genetic testing, then the Department would enter an administrative paternity order finding him to be the father by default.

¶ 8    On July 7, 2001, the Department mailed Bradley an administrative order for genetic testing. The order stated that the testing was to be performed on July 17, 2001, at the National Guard Armory in Paris, Illinois.

¶ 9    On July 17, 2001, Heather and H.L.B. appeared for the scheduled genetic testing, but Bradley failed to appear. As a result, the April 18, 2001, administrative paternity order adjudicating Bradley as H.L.B.'s father remained in effect and Bradley began paying child support.

¶ 10    On November 17, 2004, Bradley filed a petition to determine parentage in Edgar County case No. 04-F-33. In response, the Department intervened and filed a motion for involuntary dismissal under section 2-619 of the Code (735 ILCS 5/2-619 (West 2010)). On January 12, 2005, the trial court dismissed the petition on the basis of *res judicata*. The court found that the administrative paternity order issued by the Department on April 18, 2001, established Bradley as H.L.B.'s father.

¶ 11    In summer 2011, Bradley met H.L.B. for the first time. After the meeting, Bradley requested that Heather present H.L.B. for a deoxyribonucleic acid (DNA) test performed by DNA Diagnostics Center. On August 23, 2011, Heather voluntarily presented H.L.B. for the DNA test. The test results indicated that Bradley was not H.L.B.'s natural father because the probability of his paternity was zero.

¶ 12    On January 18, 2012, Bradley filed a petition to establish the nonexistence of a parent-child relationship under section 7(b-5) of the Parentage Act (750 ILCS 45/7(b-5) (West 2010)). Bradley alleged that the genetic testing performed on August 23, 2011, excluded the possibility that he is H.L.B.'s father. He also sought the vacatur of any Department or court orders regarding future child support payments.

¶ 13    In response, on January 26, 2012, the Department filed a motion for involuntary dismissal under section 2-619 of the Code (735 ILCS 5/2-619(a)(4), (a)(5) (West 2010)). The Department alleged that Bradley's petition was barred by the following: (1) *res judicata* due to the administrative paternity order entered on April 18, 2001; (2) *res judicata* under the terms of the January 12, 2005, order entered in Edgar County case No. 04-F-33; and (3) the running of the applicable statute of limitations. The Department further claimed that Bradley

lacked standing under section 7(b-5) of the Parentage Act, because he neither married Heather nor signed a voluntary acknowledgment of paternity.

¶ 14    On February 3, 2012, Heather filed a motion for involuntary dismissal. 735 ILCS 5/2-619(a)(4), (a)(5), (a)(9) (West 2010). The motion incorporated the Department's claims and further alleged that Bradley waived any future right to contest paternity by signing the 2001 agreement. She also sought attorney fees under section 17 of the Parentage Act (750 ILCS 45/17 (West 2010)) and Illinois Supreme Court Rule 137 (eff. Feb. 1, 1994).

¶ 15    After a hearing on April 11, 2012, the trial court granted the motions to dismiss. The court found that Bradley lacked standing to file a petition to establish the nonexistence of a parent-child relationship under section 7(b-5) of the Parentage Act. More specifically, the court determined that Bradley's signing of the 2001 agreement did not qualify as a voluntary acknowledgment of paternity. The court further determined that the petition was barred by *res judicata* and the running of the statute of limitations. Last, the court continued the cause for a hearing on Heather's claim for attorney fees under section 17 of the Parentage Act and requested that Heather file a financial affidavit. On April 17, 2012, Heather filed her financial affidavit.

¶ 16    On May 8, 2012, Bradley filed this appeal.


¶ 17                                    II. ANALYSIS

¶ 18    On appeal, Bradley argues that (1) he has standing to bring a cause of action to establish the nonexistence of a parent-child relationship under section 7(b-5) of the Parentage Act, (2) he filed his claim within the applicable two-year statute of limitations period, and (3) the doctrine of *res judicata* does not apply.

¶ 19    The Department argues that this court lacks jurisdiction to consider Bradley's appeal. It contends that Bradley filed his notice of appeal before all pending claims in the matter were resolved because an issue of outstanding attorney fees remained.


¶ 20                                    A. Jurisdiction

¶ 21    The Department claims that this court lacks jurisdiction to consider Bradley's appeal, because he filed his notice of appeal before all pending claims in the matter were resolved. On April 11, 2012, the trial court dismissed Bradley's petition to establish the nonexistence of a parent-child relationship and continued the cause for a hearing on Heather's claim for attorney fees under section 17 of the Parentage Act. On May 8, 2012, Bradley filed his notice of appeal. At that time, the court had not held a hearing as to whether Heather was entitled to attorney fees under section 17 of the Parentage Act.

¶ 22    In *Deckard v. Joiner*, 44 Ill. 2d 412, 417, 255 N.E.2d 900, 902-03 (1970), the Illinois Supreme Court determined that an order establishing fatherhood in a paternity action is "final for purposes of review where matters left for future determination are merely incidental to the ultimate rights which have been adjudicated by the judgment or decree. [Citations.]" In *Deckard*, the trial court entered an order finding paternity on March 27, 1962. The trial court also reserved for future determination the amount of support and pregnancy-related expenses

for which the father was liable. *Id.* at 414, 255 N.E.2d at 901. On appeal, the supreme court found that the trial court's order was neither final nor appealable, because the determination of the amount of support and expenses constituted a "matter of substantial controversy between the parties." *Id.* at 417, 255 N.E.2d at 903. However, the supreme court determined that once the trial court resolved the issues of support and expenses in February 1963, there existed a final order from which appeal should have been taken. *Id.*

¶ 23 We find that the issue of attorney fees is incidental to the ultimate rights adjudicated in a paternity action. Unlike the child support and pregnancy-related expenses at issue in *Deckard*, a determination of attorney fees is not directly tied to a finding of paternity. Moreover, in a paternity action, the amount of attorney fees is not a matter of substantial controversy, because attorney fees are not intrinsic to the underlying action. Accordingly, this court has jurisdiction to consider Bradley's appeal.

¶ 24                          B. Applicability of Section 7(b-5)

¶ 25 The issue of whether Bradley has standing to file a nonpaternity claim is really a question of whether section 7(b-5) of the Parentage Act, a very unusual section, applies to this case. Section 7(b-5) provides:

> "An action to declare the non-existence of the parent and child relationship may be brought subsequent to an adjudication of paternity in any judgment by the man adjudicated to be the father pursuant to the presumptions in Section 5 of this Act if, as a result of deoxyribonucleic acid (DNA) tests, it is discovered that the man adjudicated to be the father is not the natural father of the child. Actions brought by the adjudicated father shall be brought by verified complaint. If, as a result of the deoxyribonucleic acid (DNA) tests, the plaintiff is determined not to be the father of the child, the adjudication of paternity and any orders regarding custody, visitation, and future payments of support may be vacated." 750 ILCS 45/7(b-5) (West 2010).

¶ 26 Section 7(b-5) of the Parentage Act references the presumptions set forth in section 5. "Section 5 contains four types of presumptions of paternity, two arising out of marriage (750 ILCS 45/5(a)(1), (a)(2) (West 2002)), and two arising out of voluntary acknowledgments (750 ILCS 45/5(a)(3), (a)(4) (West 2002))." *People ex rel. Department of Public Aid v. Smith*, 212 Ill. 2d 389, 397, 818 N.E.2d 1204, 1209 (2004). The presumptions are as follows:

> "(a) A man is presumed to be the natural father of a child if:
>
> (1) he and the child's natural mother are or have been married to each other, even though the marriage is or could be declared invalid, and the child is born or conceived during such marriage;
>
> (2) after the child's birth, he and the child's natural mother have married each other, even though the marriage is or could be declared invalid, and he is named, with his written consent, as the child's father on the child's birth certificate;
>
> (3) he and the child's natural mother have signed an acknowledgment of paternity in accordance with rules adopted by the Department of Healthcare and Family Services under Section 10-17.7 of the Illinois Public Aid Code; or

(4) he and the child's natural mother have signed an acknowledgment of parentage or, if the natural father is someone other than one presumed to be the father under this Section, an acknowledgment of parentage and denial of paternity in accordance with Section 12 of the Vital Records Act." 750 ILCS 45/5(a) (West 2010).

¶ 27    In his brief, Bradley admits section 5's marital presumptions do not apply. He further admits he did not sign a voluntary acknowledgment of paternity under section 5(a)(3). Somewhat inconsistently, however, Bradley argues "he should be considered to have signed an acknowledgment of parentage pursuant [to] § 5(a)(4) in that [he] signed an Agreed Order to be Bound by the Results of Genetic Testing, and then failed to appear for testing with the knowledge that his failure to appear would result in a default Administrative Paternity Order being entered." In support of his argument that section 5(a)(4) applies, Bradley points to the following language in *Jackson v. Newsome*, 325 Ill. App. 3d 372, 380, 758 N.E.2d 342, 348 (2001):

"[S]ubsection 7(b-5)'s reference to the presumptions in section 5 *** is not meant to incorporate the minute and ministerial technical requirements of section 12 of the Records Act, which are twice removed from the original 7(b-5) reference and which are not relevant to its purpose in differentiating between adjudications based on presumptions and those based on more solid scientific evidence such as a blood test."

¶ 28    A major problem with Bradley's argument is that the Illinois Supreme Court, in *Smith*, held that section 7(b-5) should be narrowly construed, and a section 7(b-5) action may only be brought under the first two presumptions, the marital presumptions. *Smith*, 212 Ill. 2d at 406-07, 818 N.E.2d at 1214. Where the presumption of paternity arises out of a voluntary acknowledgment, section 7(b-5) does not apply. *Smith*, 212 Ill. 2d at 407, 818 N.E.2d at 1214. Instead, section 6(d) applies: "A signed acknowledgment of paternity entered under this Act may be challenged in court only on the basis of fraud, duress, or material mistake of fact." 750 ILCS 45/6(d) (West 2010). In discussing the differences between the two types of presumptions, the supreme court emphasized that it would be "unreasonable to allow a man *** to undo his voluntary acknowledgment years later on the basis of DNA test results, when his paternity was based not on a mere marital presumption that he was the child's father but on his conscious decision to accept the legal responsibility of being the child's father." *Smith*, 212 Ill. 2d at 406, 818 N.E.2d at 1214.

¶ 29    Bradley seeks to distinguish this case from *Smith*: "In this case, [Bradley] did not sign a voluntary acknowledgment of paternity." However, that argument is inconsistent with his argument, above, that he signed a voluntary acknowledgment in accordance with section 5(a)(4). Bradley argues that *Smith*'s distinction between marital presumptions and voluntary acknowledgments is mere *dicta*, and a man adjudicated to be the father pursuant to a marital presumption "also, *de facto*, acknowledges his paternity if he does not request a DNA test." What Bradley ignores, however, is that we have more than a "mere marital presumption" in this case; Bradley signed an agreed order to be bound by the results of genetic testing, was afforded an opportunity to have that testing, and failed to appear for the testing, knowing that a default order would be entered.

¶ 30    Last, *Smith* was decided after *Jackson*, and is controlling on this issue.

¶ 31                              C. Statute of Limitations

¶ 32    Even if section 7(b-5) applies, Bradley's nonpaternity claim violates the applicable statute of limitations. Section 8(a)(4) of the Parentage Act, which specifically refers to section 7(b-5), provides that actions to declare the nonexistence of paternity "shall be barred if brought *** more than 2 years after the petitioner obtains actual knowledge of relevant facts." 750 ILCS 45/8(a)(4) (West 2010). Bradley argues that he obtained "actual knowledge" that he was not H.L.B.'s natural father only upon receipt of the DNA test results. In support of his argument, Bradley dismisses his 2004 petition to declare nonexistence of paternity as "merely speculative," and points to the dictionary definition of "actual knowledge." However, section 8(a)(4) does not require knowledge of all facts, only "relevant" facts. 750 ILCS 45/8(a)(4) (West 2010). The "actual knowledge of relevant facts" that triggers the two-year limitations period is not limited to the receipt of DNA test results. "Rather, the two-year limitations period can be triggered by obtaining such knowledge from any reasonably reliable source." *Jackson*, 325 Ill. App. 3d at 385-86, 758 N.E.2d at 352. Bradley is essentially saying that his 2004 action was frivolous, and his 2001 failure to appear for genetic testing, knowing that an administrative order would be entered, is irrelevant.

¶ 33    In support of his argument, Bradley cites *Donath v. Buckley*, 319 Ill. App. 3d 83, 744 N.E.2d 385 (2001). In *Donath*, the mother filed a petition to establish the nonexistence of a father-child relationship with respect to the man who had been adjudicated as the father of her minor daughter. The mother testified that she knew from the time she was pregnant that the adjudicated father was not the natural father. *Donath*, 319 Ill. App. 3d at 85, 744 N.E.2d at 386. The Third District construed the mother's petition as one to establish the nonexistence of a father-child relationship under section 7(b) of the Parentage Act (750 ILCS 45/7(b) (West 2010)). Section 8(a)(3) requires that section 7(b) actions be brought within "2 years after the petitioner obtains knowledge of relevant facts." 750 ILCS 45/8(a)(3) (West 2010). The court determined that, in the situation where the mother believed that the man adjudicated as the child's father was in fact the father and DNA test results showed otherwise, the communication of the test results would be the first time the mother obtains knowledge of relevant facts that would trigger the two-year statute of limitations. *Donath*, 319 Ill. App. 3d at 87, 744 N.E.2d at 388. However, the court went on to conclude that, by her own admission, the mother had knowledge that the individual in question was not the father at the time she learned of the pregnancy, which was more than three years before she filed the action. *Id.* The court held that the mother's action was barred by the statute of limitations.

¶ 34    *Donath* is not directly applicable to this case because nonexistence of paternity suits brought by a mother are inherently different from nonexistence of paternity suits filed by an apparent father. Moreover, *Donath* is contrary to Bradley's argument because the Third District found the existence of relevant facts concerning the father's nonpaternity before genetic testing was performed. *Id.* at 87, 744 N.E.2d at 388. Like the mother in *Donath*,

Bradley had actual knowledge of relevant facts concerning the child's paternity before any DNA testing was performed. Bradley's 2004 petition demonstrates that at the time he filed his petition to establish parentage he had serious doubts as to whether he was H.L.B.'s natural father. Moreover, Bradley failed to show for genetic testing to determine paternity in 2001.

¶ 35 Additionally, Bradley argues that Heather refused to submit to DNA testing in 2004, and that tolled the statute of limitations. However, Heather had no obligation to submit to DNA testing in 2004. The issue had already been resolved. The language in section 8(a)(4) that "[t]he 2-year period shall not apply to periods of time where the natural mother or the child refuses to submit to deoxyribonucleic acid (DNA) tests" (750 ILCS 45/8(a)(4) (West 2010)) refers only to DNA tests which the mother or child is required to take. The language does not mean that whenever an apparent father demands a DNA test, the statute of limitations period begins to run again.

¶ 36                              D. Doctrine of *Res Judicata*

¶ 37 Under the doctrine of *res judicata*, a final judgment on the merits constitutes an absolute bar to any subsequent action involving the same claim, demand, or cause of action. *Rodgers v. St. Mary's Hospital of Decatur*, 149 Ill. 2d 302, 311-12, 597 N.E.2d 616, 621 (1992). The three requirements of the doctrine of *res judicata* are (1) a final judgment on the merits rendered by a court of competent jurisdiction, (2) an identity of cause of action, and (3) an identity of parties or their privies. *Bagnola v. SmithKline Beecham Clinical Laboratories*, 333 Ill. App. 3d 711, 717, 776 N.E.2d 730, 736 (2002). Bradley does not dispute that the first and third requirements for the application of the doctrine of *res judicata* are satisfied.

¶ 38 In terms of the doctrine's second requirement, identity of cause of action, Bradley rejects the argument that the administrative order in 2001, entered after he failed to appear for genetic testing, and the dismissal of his 2004 petition in the trial court on the basis of *res judicata* are now *res judicata*. Bradley argues that the 2001 and 2004 petitions were petitions to determine parentage, while the present one is a petition to establish nonpaternity, and therefore *res judicata* does not apply, citing *In re Marriage of Lubbs*, 313 Ill. App. 3d 968, 730 N.E.2d 1139 (2000). We reject Bradley's argument. Under the doctrine of collateral estoppel, findings of fact can be *res judicata* in a second action, even if there are separate causes of action. And was not Bradley's 2004 action one to establish nonpaternity? Surely he was not suing to establish paternity. Accordingly, we find that the doctrine's second requirement was satisfied.

¶ 39 Of course, section 7(b-5) was added "specifically to allow an adjudicated father to collaterally attack [a] previous adjudication if subsequent DNA tests established that he is not the father." *Jackson*, 325 Ill. App. 3d at 383, 758 N.E.2d at 350. That does not mean that *res judicata* never applies where section 7(b-5) is involved. Where a final judgment has determined that section 7(b-5) does not apply, that judgment is *res judicata*. It is only where a judgment has simply determined paternity (on the basis of a marital presumption) that a subsequent action may be brought under section 7(b-5).

## III. CONCLUSION

¶ 41      For the foregoing reasons, we affirm the trial court's judgment.

¶ 42      Affirmed.