# Illinois Official Reports

## Appellate Court

*In re Marriage of Ostrander*, 2015 IL App (3d) 130755

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF JERRY L. OSTRANDER, Petitioner-Appellee, and STARR E. OSTRANDER, Respondent-Appellant. |
| District & No. | Third District<br>Docket No. 3-13-0755 |
| Filed | February 25, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In dissolution proceedings where the paternity of one of the two children respondent mother had during the marriage was disputed, but petitioner husband's motion to declare nonpaternity was untimely and respondent waived the issue, the trial court's order of nonpaternity was reversed, a guardian *ad litem* was appointed for the child, and the cause was remanded for a hearing on child support. |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 12-D-957; the Hon. Robert P. Brumund, Judge, presiding. |
| Judgment | Reversed in part; cause remanded. |
| Counsel on Appeal | Mary Beth Szudarek, of Law Offices of Janusonis and Szudarek P.C., of Lockport, for appellant.<br><br>Jeannine M. Parker-Ross, of Joliet, for appellee. |

JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
          Justices Holdridge and Lytton concurred in the judgment and opinion.


**OPINION**

¶ 1      Petitioner, Jerry L. Ostrander, filed a petition for dissolution of his marriage to respondent, Starr E. Ostrander. In the petition, Jerry asserted that one of the two children born to Starr during the marriage, R.O., was not Jerry's biological child. After deoxyribonucleic acid (DNA) testing confirmed that Jerry was not the biological father of R.O., Jerry filed a pleading entitled "Motion Regarding Finding No Paternity." The court granted Jerry's motion, finding that Jerry was not R.O.'s biological father and therefore had no support obligation. The court denied Starr's motion to reconsider the order and the judgment of dissolution of marriage. Starr appeals, arguing that Jerry's motion regarding paternity was barred by the relevant statute of limitations. We reverse in part, vacate in part, and remand for further proceedings.

¶ 2                                    FACTS
¶ 3      On May 8, 2012, Jerry filed a petition for dissolution of marriage. In the petition, Jerry acknowledged that two children were born to his wife Starr during the time they were married: J.O., born in 1997, and R.O., born in 2004. The petition alleged that "upon information and belief, [R.O.] is not the biological [child] of [Jerry]."

¶ 4      In her response, Starr denied that Jerry was not the father of R.O. She asserted that Jerry was indicated as the father on R.O.'s birth certificate and that Jerry had taken no steps to disavow his parentage. Starr sought sole custody of the children as well as support and expenses. In multiple responses to Starr's petitions, Jerry repeatedly averred that only one child had been born to the parties.

¶ 5      Jerry and R.O. participated in DNA testing, which established that Jerry was not the biological father. Jerry subsequently filed a "Motion Regarding Finding No Paternity." In the motion, Jerry asked the court to find that he was not the biological father of R.O. and that he owed no duty of support for the child. The motion proceeded to a hearing.

¶ 6      At the hearing, Jerry was represented by counsel while Starr proceeded *pro se*. Starr told the court that both she and Jerry knew immediately that R.O. was not Jerry's biological child: "He knew from the day of conception that it would not be his. We talked about it. We worked things out. We stayed together. He was there in the delivery room. He named her." Jerry did not testify and presented no evidence other than referencing the results of the DNA test. Starr did not object to the results of the DNA test. The court found that Jerry was not the father of R.O., but reserved the issue of child support.

¶ 7      The matter went to trial on March 14, 2013. Once again, Jerry was represented by counsel while Starr appeared *pro se*. Starr reiterated her position regarding Jerry's knowledge of relevant facts:

"He was aware at conception that it might not be his child. We decided to work things out. I offered to have an abortion if I thought that he wasn't going to love the child. He offered to have me keep it because he knew how I felt about abortion. He is the only father she's ever known. It's from day one he knew."

¶ 8 Jerry testified that he and Starr were married on November 22, 1995. He acknowledged that they were married when Starr gave birth to R.O. in 2004. He testified that R.O. was not his biological child and that he never adopted the child.

¶ 9 Jerry testified that he was aware of Starr's infidelity when he found out she was pregnant. He agreed that he and Starr had discussed the possibility that the child might not be his. He testified that at that time he thought the child "could have possibly been" his. Jerry indicated that when R.O. was born with the genetic disease phenylketonuria (PKU), he and Starr discussed that the child was not his.

¶ 10 Starr testified that Jerry knew R.O. was not his child after R.O. was diagnosed with PKU. She did not realize that they needed to have R.O. adopted, admitting they would have done so had they known.

¶ 11 The court ruled that the presumption of paternity had been rebutted, Jerry was not the father of R.O., and he "owe[d] no duty or responsibility pursuant to the law to pay support or maintain the minor child [R.O.]" This ruling was incorporated into the court's judgment for dissolution of marriage dated April 18, 2013. The judgment ordered that Jerry did not owe any duty of support for R.O.

¶ 12 Starr, now represented by counsel, filed a motion to reconsider. In the motion, Starr argued that the relevant statute of limitations precluded a finding that Jerry was not the father of R.O. She contended that Jerry knew R.O. was not his biological child when R.O. was diagnosed with PKU at birth. The motion emphasized that Starr had been proceeding *pro se*.

¶ 13 In response, Jerry pointed out that Starr "did not present any relevant law" at the trial, and he contended that the statute of limitations issue had been waived because Starr had not raised it in pleadings. Jerry also noted that Starr was advised of her right to seek counsel and given ample time to procure counsel. Jerry further asserted "there was no evidence presented that [Jerry] knew more than 8 years ago that [R.O.] was not his. There was no evidence at all presented as to when the PKU was diagnosed or the nature of the disorder." He admitted that he contributed to the support of the household during the course of the marriage.

¶ 14 The court denied the motion, stating only the following:

"I've thoroughly read the motion to reconsider. I've reviewed the cases that you've cited in your motion to reconsider. I've read the response and the reply.

I'm going to deny the motion to reconsider. I do not believe under the circumstances that your argument applies. So the motion to reconsider is denied."

Starr appeals, renewing the statute of limitations argument made in her motion to reconsider.

¶ 15 ANALYSIS

¶ 16 I. Waiver

¶ 17 Starr raised the statute of limitations issue for the first time in a motion to reconsider. A statute of limitations is an affirmative defense. *In re Parentage of Janssen*, 292 Ill. App. 3d 219, 228 (1997). This defense may be waived if not raised in the trial court. *Id*. A trial court may, however, at its discretion, address issues raised for the first time in a motion to

- 3 -

reconsider. *Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd.*, 376 Ill. App. 3d 1006, 1022 (2007). A trial court should only address such an issue when there is "a reasonable explanation of why it was not [raised] at the time of the original hearing." *Delgatto v. Brandon Associates, Ltd.*, 131 Ill. 2d 183, 195 (1989).

¶ 18    In his response to Starr's motion to reconsider, Jerry argued that the statute of limitations defense had been waived. His emphasis on the facts that Starr was advised of her right to counsel and that she had ample time to procure counsel and to conduct research may be read as implicit arguments that there was no "reasonable explanation" why the statute of limitations issue had not been raised earlier. Nevertheless, the trial court ruled on the merits of Starr's motion. The court opined that Starr's argument was inapplicable, rather than ruling that the issue had been waived. The trial court having addressed the newly raised issue, we must assume the court found there to be a reasonable explanation for why the issue was not raised earlier. See *O'Casek v. Children's Home & Aid Society of Illinois*, 374 Ill. App. 3d 507, 513 (2007) (rejecting argument that court had dismissed motion to reconsider pursuant to *Delgatto* where record gave no indication that court's denial of the motion was based on untimeliness).

¶ 19    Importantly, Jerry does not challenge the trial court's decision to address the statute of limitations issue raised in Starr's motion to reconsider. Nor does he renew his argument here that Starr waived the issue by not including it in her pleadings. These arguments are therefore forfeited. *People v. De La Paz*, 204 Ill. 2d 426, 432 (2003) (" '[T]he general rule is that where a question is not raised or reserved in the trial court, or where, though raised in the lower court, it is not urged or argued on appeal, it will not be considered and will be deemed to have been waived.' " (quoting *People v. Burson*, 11 Ill. 2d 360, 370 (1957))). That is, we find the waiver argument forfeited. We will, therefore, proceed to the merits of Starr's statute of limitations argument.

¶ 20                              II. Statute of Limitations

¶ 21    On appeal, Starr argues that the statute of limitations found in the Illinois Parentage Act of 1984 (Parentage Act) (750 ILCS 45/1 *et seq.* (West 2004)) barred Jerry from bringing his motion regarding a finding of no paternity. She argues the trial court erred as a matter of law by declaring the nonexistence of the parent-child relationship. Whether a statute of limitations acts to bar a cause of action is a question of law we review *de novo*. *In re D.D.*, 196 Ill. 2d 405, 418 (2001).

¶ 22    Section 5 of the Parentage Act provides that "[a] man is presumed to be the natural father of a child if *** he and the child's natural mother are or have been married to each other *** and the child is born or conceived during such marriage." 750 ILCS 45/5(a)(1) (West 2004). The Parentage Act also provides that such a presumption under subsection (a)(1) may be rebutted by clear and convincing evidence. 750 ILCS 45/5(b) (West 2004).

¶ 23    Section 7(b) provides that "[a]n action to declare the non-existence of the parent and child relationship may be brought by the child, the natural mother, or a man presumed to be the father under subdivision (a)(1) or (a)(2) of Section 5 of this Act." 750 ILCS 45/7(b) (West 2004). This cause of action, however, is limited by section 8 of the Parentage Act, entitled "Statute of limitations." 750 ILCS 45/8 (West 2004). Specifically, subsection (a)(3) provides: "An action to declare the non-existence of the parent and child relationship brought

under subsection (b) of Section 7 of this Act shall be barred if brought later than 2 years after the petitioner obtains knowledge of relevant facts." 750 ILCS 45/8(a)(3) (West 2004).

¶ 24     When a statute of limitations is raised as an affirmative defense, the burden of proof is placed upon the party seeking to prevent the operation of the statute to show that he falls within the "discovery" exception of the statute. *Blair v. Blondis*, 160 Ill. App. 3d 184, 188 (1987). The same has been held true in the context of parentage cases. *People ex rel. Adams v. Mitchell*, 89 Ill. App. 3d 1023, 1026 (1980) ("It is the party seeking to avoid application or operation of the limitation period who has the burden of proving the facts which will establish his contention.").

¶ 25     When Starr asserted that Jerry's motion–brought eight years after the birth of R.O.–was barred by the statute of limitations, the burden fell to Jerry that he had only "obtain[ed] knowledge of relevant facts" within two years of bringing the motion. He did not meet this burden. Though he argues that the evidence presented by Starr was insufficient, this argument improperly places the burden on Starr. Jerry did not attach an affidavit to his response to Starr's motion to reconsider and did not request a hearing on the matter. Nor did he otherwise present any evidence over the course of the prior proceedings that would indicate he only recently discovered he was not R.O.'s biological father.

¶ 26     While Jerry did present the results of DNA testing, "[t]he 'actual knowledge of relevant facts' that triggers the two-year limitations period is not limited to the receipt of DNA test results." *In re Parentage of H.L.B.*, 2012 IL App (4th) 120437, ¶ 32 (quoting 750 ILCS 45/8(a)(4) (West 2010)). Knowledge of relevant facts triggering the statute of limitations can be inferred where it has been demonstrated that a man has serious doubts as to whether he is the child's parent. *Id.* ¶ 34. Here Jerry admitted that there were doubts as to the parentage of R.O. and that those doubts became more concrete following the diagnosis of PKU. While Jerry was burdened with proving that he did not have knowledge of relevant facts concerning R.O.'s parentage, his testimony actually helped to prove that he *did* have knowledge of such facts.

¶ 27     Jerry also contends that the statute of limitations under the Parentage Act did not begin to run until he filed his original motion for dissolution. In support of this argument, Jerry points to section 8(b) of the Parentage Act:

> "(b) The time during which any party is not subject to service of process or is otherwise not subject to the jurisdiction of the courts of this State shall toll the aforementioned periods." 750 ILCS 45/8(b) (West 2004).

The statute of limitations in this matter, Jerry argues, did not begin to run until he filed his petition for dissolution, because "[a] petition must be filed by a litigant framing a justiciable matter in order for the trial court to invoke jurisdiction" (citing *In re Parentage of G.E.M.*, 382 Ill. App. 3d 1102, 1121 (2008)).

¶ 28     Jerry's argument misconstrues the word "jurisdiction" and is without merit. In the passage quoted by Jerry, this court was referring to the types of matters over which the appellate court may assert jurisdiction; an issue must be " 'definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests.' " *Id.* (quoting *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 335 (2002)). The jurisdictional provision in the Parentage Act's statute of limitations plainly refers to the powers of the courts of Illinois to assert personal jurisdiction over an individual. See, *e.g.*, *Sakellariadis v. Spanos*, 163 Ill. App. 3d 1084, 1090 (1987) (rejecting

defendant's argument, that section 8(b) of Parentage Act tolled statute of limitations, on grounds that defendant was subject to personal service inside or outside of the state of Illinois). Jerry has never asserted that he resides outside of the state or is otherwise not subject to jurisdiction of the courts of this state. See 735 ILCS 5/2-209 (West 2004) (enumerating actions that would submit an individual to the jurisdiction of the courts of this state).

¶ 29 We feel compelled to point out that the statute of limitations of the Parentage Act is intended to control in situations precisely like the one before us. The Fourth District has explained the policy underlying the statute of limitations in the Parentage Act:

> "To paraphrase Justice Holmes, a child, 'like a tree in the cleft of a rock, gradually shapes his roots to his surroundings, and when the roots have grown to a certain size, cannot be displaced without cutting at his life.' (M. Lerner, The Mind and Faith of Justice Holmes 417 (1953); [citation]. It is wrong to make a child a part of a family unit and pass over substantial concerns regarding the child's paternity only to raise them years later in an attempt to avoid child support." *In re Marriage of O'Brien*, 247 Ill. App. 3d 745, 750 (1993).

¶ 30 Finally, we note that Jerry has at all times been represented by counsel. Though Starr's interests were aligned with those of R.O., Starr proceeded *pro se*, leaving no one to advocate for the child. Under Illinois law, a guardian *ad litem* may be appointed in any proceedings involving, *inter alia*, support or parentage. 750 ILCS 5/506(a)(2) (West 2012). Indeed, when a court finds that a child's interests are not properly represented, it has a duty to appoint a guardian *ad litem*. *In re Parentage of Griesmeyer*, 302 Ill. App. 3d 905, 913 (1998). It is clear that R.O.'s interests were not adequately represented below. On these facts, we hold that the trial court had a duty to appoint a guardian *ad litem* to represent the interests of R.O. The trial court erred by not doing so. However, the record is clear that Jerry's motion to declare nonpaternity was time-barred. The order of nonpaternity as to R.O. is reversed. The matter is remanded for setting of child support.

¶ 31                                  CONCLUSION

¶ 32 For the foregoing reasons, the judgment of the circuit court of Will County is reversed in part and remanded for further proceedings.

¶ 33 Reversed in part; cause remanded.