2025 IL App (1st) 221531-U

SECOND DIVISION
May 13, 2025

Nos. 1-22-1531 and 1-23-0158 (Consolidated)

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| FELIX RAIBER, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 21 CH 02068 |
| | ) | |
| BEN WEINSCHNEIDER, | ) | Honorable |
| | ) | Patrick J. Sherlock, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE VAN TINE delivered the judgment of the court.
Justices Howse and Ellis concurred in the judgment.

**ORDER**

¶ 1    ***Held*****:**  We reverse the circuit court because it erred in applying the burden of proof as to the borrower's affirmative defense of usury, and we were unable to determine what the court's finding was as to whether the loans at issue were business loans or personal loans. We remand to the circuit court to apply the correct burden of proof and to determine whether the loans at issue are personal loans or business loans.

¶ 2    Felix Raiber, a lender, sued Ben Weinschneider, a borrower, for breach of contract after Weinschneider defaulted under the terms of a promissory note that evidenced several loans Raiber

had extended to Weinschneider. Weinschneider asserted the affirmative defense of usury, contending that the loans, which all charged interest rates of 15% or higher, were unlawful under the Interest Act, which generally limits interest rates to 9%. 815 ILCS 205/4(1) (West 2022). Following a bench trial, the circuit court found that Weinschneider did not establish his affirmative defense and found in favor of Raiber, allowing him to charge Weinschneider rates more than the generally allowable 9%. On appeal, Weinschneider argues that the court erred in finding that he failed to establish his affirmative defense of usury. For the following reasons, we reverse and remand.

¶ 3                              I. BACKGROUND

¶ 4      The central issue in this case is whether Raiber's loans to Weinschneider were personal loans or business loans. If they were personal loans, then the interest rates Raiber could lawfully have charged should have been limited to 9% or lower. *Id.* However, if the loans were business loans, Raiber was free to charge any interest rate. *Id.*

¶ 5                          A. The Promissory Note

¶ 6      Raiber and Weinschneider met in person for the first time in May or June 2017. On June 5, 2017, Raiber lent Weinschneider $100,000 and the parties executed a promissory note that indicated a 15% interest rate and a 25% interest rate in case of default.

¶ 7      Weinschneider contends that he sought a loan because he needed money to cover his living expenses, as he did not have income at that time. Raiber, on the other hand, states that his son, Ben Raiber, introduced him to Weinschneider because Weinschneider knew that Raiber lent money to businesses for investment purposes.

¶ 8      On July 24, 2017, Raiber extended a second loan to Weinschneider, this time for $50,000. A text message from Weinschneider to Raiber from that day reads:

"Good afternoon Felix, Ben mentioned you have $50,000 available to invest at

Terms: If we did the $50,000 at an 18 month loan, with right to prepay like the last contract

that would work well. Let me know what you're[*sic*] thoughts are thank you. Ben W."

Raiber responded stating that he was "ready to invest" and they agreed on an interest rate of 15%, just as with the June 2017 loan.

¶ 9      On September 28, 2017, Raiber lent Weinschneider $80,000 with the same interest rate as the first two loans. On February 1, 2018, Raiber lent Weinschneider $60,000. On May 4, 2018, Raiber lent Weinschneider another $60,000. All five loans were evidenced by separate promissory notes and deposited into the accounts of LLCs owned by Weinschneider.

¶ 10     On October 13, 2019, Raiber emailed Weinschneider two new promissory notes replacing the five promissory notes. Raiber combined the first two loans into one promissory note with an amended interest rate of 18% and 30% default rate. Raiber also combined the September 2017, February 2018, and May 2018 notes into one note with the same amended interest rates. Thus, on October 13, 2019, the five promissory notes, each evidencing one loan, merged into two promissory notes.

¶ 11     In November 2020, Raiber's attorney sent Weinschneider a draft replacement note that would merge the two prior notes. The draft included language stating that it reflected a prior "business purpose loan." Weinschneider objected to that language. Weinschneider's attorney emailed Raiber's attorney stating that he "took out the business purpose loan because it was a personal loan for household expenses." In the final version of the note, dated December 1, 2020, Raiber and his attorney agreed to remove the "business purpose" language and agreed on a 15% interest rate (with a 28% default rate). The note also reflected Weinschneider's agreement to pay Raiber $401,059 plus 15% interest. Under the terms of the note, Weinschneider would make

monthly payments of $5,013.24 in interest and $2,000 in principal. The note defined default as Weinschneider's failure to pay any installment of principal and interest by the fifth day of each month. In case of default, Weinschneider would be liable for all principal due, default interest on the unpaid principal balance at the rate of 28%, and a daily late charge of five cents for each overdue dollar of principal.

¶ 12                                B. Default and Bench Trial

¶ 13    On February 4, 2021, Raiber sent a text message to Weinschneider telling him that he had not received the February 1, 2021, payment. On February 18, 2021, Raiber declared all unpaid principal and interest due on the note. On February 24, 2021, Raiber sued Weinschneider for breach of contract under the note. The matter eventually proceeded to a bench trial, the judgment from which forms the basis for this appeal.

¶ 14    At the September 12, 2022, bench trial, the central issue was whether the loans at issue were personal or business in nature. Thie circuit court noted that if personal, then the interest rates Raiber charged were unlawful. If business, then Raiber was free to charge any interest rate. Three witnesses testified: Ben Raiber (Felix's son), Felix Raiber, and Weinschneider.

¶ 15    Ben and Felix Raiber introduced evidence they believed supported a finding that the loans were business loans.

¶ 16                                1. Ben Raiber's Testimony

¶ 17    Ben Raiber testified that he met Weinschneider in 2015. Weinschneider presented himself as a successful businessman who was looking for someone with liquid assets to loan him money for projects and investments. These included affordable housing deals in Chicago as well as real estate deals in New York and Florida. Ben Raiber denied that Weinschneider ever indicated he

needed money for personal financial reasons. As early as 2017, Weinschneider showed Ben Raiber a large binder of housing deals he was working on in Chicago.

¶ 18                                  2. Felix Raiber's Testimony

¶ 19    Felix Raiber testified that he met Weinschneider through his son, who had told him that Weinschneider is a rabbi, which immediately made him more trustworthy in Felix's eyes. At that time, Felix was in the business of lending money, and he decided to lend Weinschneider $100,000 without consulting with an attorney for review. He understood that the loan was for a real estate project in New York. Felix charged at least 12% interest on loans but charged 15% on this loan to Weinschneider. Felix initially wrote a check to Weinschneider for the first loan, but Weinschneider insisted on a wire transfer to the account of Design Build Consulting Group, LLC (a company owned by Weinschneider). After that first loan, Weinschneider would ask Felix if he had "money to invest." Felix's understanding was that when Weinschneider said he wanted to "use the funds on a small project," this meant investing in a business. Felix denied that Weinschneider ever told him that any of the five loans were for personal reasons. When asked why he wrote "personal" in the Memo line of a check he gave to Weinschneider, Felix stated that he viewed it as a loan from one person to another, as opposed to a loan between a person/company and another company. He also explained that English was his third language, so that contributed to imprecise terminology.

¶ 20                                  3. Weinschneider's Testimony

¶ 21    Weinschneider provided an affidavit stating he used the loans to fund personal and living expenses, including mortgage, utilities, food, college tuition, and a $125,000 wedding for his daughter. He testified that he had no income in 2016 – the year before he received his first loan from Raiber. He stated that the first loan from Raiber "was a personal loan because at the time [he] was in desperate need of living expenses and money because [he] did not have income." He also

stated that he never told Raiber the loan was a business loan, and that he had told Ben Raiber that he was having financial issues on numerous occasions. Weinschneider denied having an involvement in drafting any of the notes—that is, Felix drafted the notes and set the interest rates. However, text messages between him and Felix appeared to indicate that he prepared two of the notes. He also denied that he ever told Felix what specifically he would use the loan money for but indicated that he told him the loan would be for "personal expenses."

¶ 22                                    C. The Circuit Court's Ruling

¶ 23    The circuit court issued an oral ruling. Based on the foregoing, it first stated that it could not "determine whether [the loans were] for business purposes or for personal purposes. That burden of proof was Mr. Weinschneider's to introduce into the Court." However, the court then considered several factors, which weighed in favor of a finding that the loans were business loans: (1) all the money Raiber loaned Weinschneider was deposited into a business checking account at Chase Bank, (2) Raiber testified that it was his intention to make a business loan to Weinschneider for investment purposes, and he used that language in text messages to Weinschneider, (3) Weinschneider discussed business ventures with Ben Raiber and did not inform him or Felix that he required money for personal expenses, and (4) Weinschneider's testimony was not necessarily that he explicitly told Raiber he intended to use the loans for personal reasons; if he had explicitly stated that, the court did not believe Raiber would have lent the money to him. The court also noted the use of business terms in correspondence between the parties, including "project" and "deal." The court found the foregoing factors indicative of business loans, concluded that "Weinschneider ha[d] [not] carried his affirmative defense" of usury, and found in Raiber's favor.

¶ 24    In sum, although the court first stated that it could not determine whether the loans were business or personal, its subsequent analysis suggested they were business loans.

¶ 25    Weinschneider appeals.

¶ 26                                    II. ANALYSIS

¶ 27    On appeal, Weinschneider argues that the circuit court erred in ruling that he failed to meet his burden of proof that the interest rate Raiber charged was usurious. The exact issue of who bears the burden of proof in showing an exception to the Interest Act applies appears to be one of first impression in Illinois. Weinschneider also challenges the court's "implicit finding" that the loans at issue were business loans. As mentioned above, the case turns on whether the loans were business loans, for which any interest rate can be charged, or whether they were another type of loan, such as a personal loan, for which interest is capped at 9%. Neither side disputes that Raiber established a *prima facie* case of breach of contract at trial.

¶ 28                          A. The Interest Act and Usury Defense

¶ 29    In Illinois, the Interest Act limits the amount of interest a lender may charge on a loan. Under section 4(1) of the Interest Act (815 ILCS 205/4(1)) (West 2022)), a borrower and lender may agree to an annual interest rate, but the rate generally cannot exceed 9%. However, the statute carves out an exception for interest rates on business loans:

> "It is lawful to charge, contract for, and receive any rate or amount of interest or compensation *** with respect to *** any business loan to a business association or copartnership or to a person owning and operating a business as sole proprietor or to any persons owning and operating a business ***." 815 ILCS 205/4(1)(c) (West 2022).[1]

---

[1] Weinschneider claims that the rate Raiber charged was criminally punishable, but we do not see the relevance of his claim in this civil case. There is no indication that any criminal charges were brought against Raiber. For context, under our Criminal Code, a lender can be held criminally liable if the interest rate charged exceeds 20%. 720 ILCS 5/17-59(a) (West 2022). In the criminal context as well as the civil context, a lender may charge any interest rate on a business loan. 720 ILCS 5/17-59(d) (West 2022).

¶ 30    A loan that charges an unlawful interest rate is voidable (but not void *ab initio*) by the borrower. See *Hall v. Montaleone*, 38 Ill. App. 3d 591, 592-93 (1976). That is, the borrower may assert an affirmative defense that the interest rate is usurious and must prove this defense by a preponderance of the evidence. *Hotchkiss v. Norwood Park Building, Loan & Homestead Ass'n*, 229 Ill. 248, 259 (1907). The elements of a usury defense are (1) a loan (2) of money (3) that is repayable absolutely, and that (4) requires something "in addition to lawful interest." *General Motors Acceptance Corp. v. Kettleson*, 219 Ill. App. 3d 871, 876 (1991) (citing *Tyrcha v. Wesolek*, 187 Ill. App. 3d 354, 357 (1989)). To properly allege the affirmative defense of usury, a borrower need only allege that the interest rates exceeded the 9% general interest rate. *Baker v. Gray*, 141 Ill. App. 3d 444, 447 (1986). The borrower "need only allege facts showing that the [lender] was charging higher than the general interest rate; the defendant need not rebut any of the exceptions to the interest ceiling." *Id.* (citing *Edwards v. Wilcutts*, 20 Ill. App. 3d 699, 702 (1974)).

¶ 31    In this case, only the fourth element is in dispute: whether the note's interest rate exceeded what was lawful. As mentioned above, that determination turns on whether the loans were business or personal.

¶ 32    However, before we can reach the question of whether the loans were business or personal, we must first address how the court applied the burden of proof. We review challenges to the circuit court's determination regarding burden of proof *de novo* because such issues raise questions of law. *1350 Lake Shore Associates v. Healey*, 223 Ill. 2d 607, 627 (2006).

¶ 33                                B. Burden of Proof

¶ 34    Raiber filed a breach of contract complaint against Weinschneider after Weinschneider defaulted on the promissory note's repayment terms. In response, Weinschneider asserted the affirmative defense of usury claiming that the interest rate Raiber charged (28%) was unlawful

under the Interest Act. The circuit court found that Weinschneider did not meet his burden of proof because he did not show that the loans were personal loans. However, that burden was not Weinschneider's. After Weinschneider established that the loans were unlawful because the interest rates exceeded 9%, the burden shifted back to Raiber to show that the business loan exception (815 ILCS 205/4(1)(c) (West 2022)) applied, which would have allowed him to charge a rate higher than the generally allowable 9% because "a party wishing to benefit by an exception must prove that he comes within it." *Lake County v. Zenko*, 174 Ill. App. 3d 54, 66 (1988); *City of Chicago v. Elmhurst National Bank*, 35 Ill. App. 2d 383, 388-89 (1962).

¶ 35    In other areas of the law, when a defendant raises an affirmative defense and the plaintiff raises an exception to the affirmative defense, the plaintiff has the burden of proving that exception. See, *e.g.*, *Willet v. Cessna Aircraft Co.*, 366 Ill. App. 3d 360, 371 (2006) ("defendants have the burden of proof for a statute of repose, because it is an affirmative defense, while plaintiffs have the burden of proving the existence of facts that would *** constitute an exception to the general repose rule); *South Side Trust Savings Bank of Peoria v. Mitsubishi Heavy Industries, Ltd.*, 401 Ill. App. 3d 424, 442 (2010) (same); *In re Marriage of Ostrander*, 2015 IL App (3d) 130755, ¶ 24 ("When a statute of limitations is raised as an affirmative defense, the burden of proof is placed upon the party seeking to prevent operation of the statute to show that he falls within the 'discovery' exception of the statute.").

¶ 36    Accordingly, because Raiber wished to benefit from the statutory exception for interest rates on business loans, it was his burden to prove that these loans were business loans that qualified for the exception.

¶ 37                         C. Classification of the Loans

¶ 38    Second, the record reflects that the circuit court was unable to determine whether the note dealt with business loans or personal loans. The court stated it could not "determine whether [the loans were] for business purposes or for personal purposes." However, the court then nonetheless engaged in a multi-factor analysis of the evidence and then also stated "[the factors] are clearly indicative of business loans in this court's view." Based on these contradictory conclusions, we are unable to review whether the court's findings were against the manifest weight of the evidence because we are unable to ascertain what the court's finding actually was: was the court unable to determine the nature of the loans, or did it conclude they were business loans?

¶ 39    If the court found that the loans were business loans, it should have found in lender Raiber's favor. In other words, if Raiber proved that the business loan exception applied, then the interest rates are lawful and borrower Weinschneider's affirmative defense fails. But if the court found that it could not "determine whether [the loans were] for business purposes or for personal purposes" and the evidence is inconclusive as to whether the loans were business loans, then it should have found in Weinschneider's favor (if Raiber failed to show that the exception applied). If the evidence was evenly balanced as to whether the loans were business loans, then Raiber failed to meet his burden of proof by a preponderance of the evidence, which meant that the 9% general interest rate cap applied, the loans were usurious, and Weinschneider prevailed.

¶ 40    It is quite possible that the circuit court was in the process of weighing its options as it thought more and more about the evidence. However, the process has left us with a record where we cannot ascertain whether the ultimate trial finding in favor of Raiber is against the manifest weight of the evidence or not, especially given the initial confusion over the burden of proof.

¶ 41    Based on the foregoing, we reverse and remand this matter to the circuit court to apply the correct burden of proof as to the business loan exception and then decide whether Raiber met his

burden of proving that the loans were business loans. To be clear, we do not opine on the issue of which party should ultimately prevail as it is the circuit court's role as the trier of fact to clarify what its findings of fact are. There is no need for a new trial. The circuit court can issue its finding based on its well-run bench trial. However, to the extent the circuit court finds it necessary to consider further evidence, it may order the parties to tender additional evidence.

¶ 42                                III. CONCLUSION

¶ 43    For these reasons, we reverse and remand the judgment to the circuit court of Cook County.

¶ 44    Reversed and remanded.